IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No. 3:25-cr-102 |
| | ) | |
| v. | ) | Bank Fraud |
| | ) | 18 U.S.C. §§ 1344(2) & 2 |
| AHSHAH DIOR MARTIN, | ) | (Count 1) |
| | ) | |
| Defendant. | ) | Forfeiture Allegation |

CRIMINAL INFORMATION

THE UNITED STATES ATTORNEY CHARGES THAT:

COUNT ONE
(Bank Fraud)

1. From at least on or about July 25, 2023, and continuing through at least April 2024, in the Eastern District of Virginia and elsewhere, the defendant, AHSHAH DIOR MARTIN, did knowingly execute and attempt to execute a scheme and artifice to obtain moneys, funds, and property owned by and under the custody and control of Truist Financial Corporation, a financial institution the deposits of which were insured by the Federal Deposit Insurance Corporation, by means of materially false and fraudulent pretenses, representations, and promises.

*Introductory Allegations*

2. At all times relevant to the Criminal Information, Truist Financial Corporation (hereinafter "Truist") was a financial institution, as that term is defined in 18 U.S.C. Section 20, with its deposits insured by the Federal Deposit Insurance Corporation.

3. From on or about August 8, 2022, and continuing through on or about April 15, 2025, MARTIN was employed at Truist as a Collector I (Demand Deposit Account) in

Richmond, Virginia. In this capacity, MARTIN had access to Truist account holders' personal information, including names, dates of birth, taxpayer identification numbers, and bank account numbers.

### *Purpose of the Scheme and Artifice to Defraud*

4.  The purpose of the scheme and artifice to defraud was for MARTIN and her associates, aiding and abetting each other, to unjustly enrich themselves by: (1) improperly using MARTIN's access to Truist computer systems to obtain Truist account holders' banking information; (2) initiating fraudulent debits and withdrawals from Truist account holders' bank accounts for the benefit of MARTIN and her associates; and (3) concealing fraudulently obtained funds and wrongdoing from Truist, Truist account holders, and law enforcement.

### *Ways, Manner, and Means of the Scheme and Artifice*

5.  At least as early as July 25, 2023, and continuing through at least as late as February 9, 2024, MARTIN began improperly gathering Truist account holders' banking information using her access to Truist computer systems. Using this improperly obtained banking information, MARTIN thereafter initiated fraudulent debits and withdrawals from Truist account holders' bank accounts without the account holders' knowledge or authority – all for the benefit of MARTIN and her associates.

### *Theft from the Truist Account of M.R.E.*

6.  As an illustrative example, between on or about October 28, 2023, and continuing through on or about February 8, 2024, over twenty-three separate days, MARTIN used her Truist access to retrieve the banking information for M.R.E.

7.  Then, on or about January 19, 2024, MARTIN used the name and Truist bank account information of M.R.E. to initiate a $5,500 payment to MyChildSupport, a child support

payment processor for the Virginia Department of Social Services. The transaction resulted in MARTIN paying herself through the account profile of J.M. (the father of MARTIN's child). This payment was broken up into two components: (1) a $4,743.41 payment to pay child support to MARTIN; and (2) a $756.59 payment to pay child support to a separate mother of J.M.'s child, C.M.[1] In making this payment, MARTIN falsely purported to be J.M. and falsely purported to have the authority to initiate payments from M.R.E.'s Truist account.

8. MARTIN's fraudulent transaction caused $4,743.41 to be loaded on a pre-paid debit card for child support payments, issued in MARTIN's name (Mastercard ending -8928) on or about January 30, 2024.

9. On or about January 26, 2024, MARTIN used the name and Truist bank account information of M.R.E. to initiate an $8,500 payment to MyChildSupport. The transaction resulted in MARTIN paying herself through the account profile of J.M (the father of MARTIN's child). MARTIN initiated this payment from her home in South Chesterfield, Virginia, within the Eastern District of Virginia. This payment was broken up into: (1) a $7,317.86 payment to MARTIN; and (2) a $1,182.14 payment to C.M. In making this payment, MARTIN falsely purported to be J.M. and falsely purported to have the authority to initiate payments from M.R.E.'s Truist account.

10. MARTIN's fraudulent transaction caused $7,317.84 to be loaded on a pre-paid debit card for child support payments, issued in MARTIN's name (Mastercard ending -8928) on or about February 1, 2024.

---

[1] Virginia law requires proration of child support payments among all children of the payor. MyChildSupport enforces this proration. Therefore, MARTIN was precluded from directing payment exclusively to herself.

3

11. From on or about February 1, 2024, and continuing through on or about February 8, 2024, across three separate transactions, MARTIN transferred at least $9,000 in funds stolen from the M.R.E. Truist account from her pre-paid debit card for child support payments (Mastercard ending -8928) to a separate Wells Fargo Bank account (account number ending in -3876). MARTIN was the sole owner of the Wells Fargo Bank account ending in -3876. MARTIN spent fraudulently obtained funds from the M.R.E. Truist account on her personal expenses, to include on cosmetic products, clothing, travel expenses, dining, and at a hookah bar.

*Theft from the Truist Account of Company 1*

12. Between on or about January 2, 2024, and continuing through on or about January 15, 2024, over three separate days, MARTIN used her Truist access to retrieve the account information for Company 1, an auto body repair store in North Carolina. Then, on or about February 9, 2024, MARTIN used the name and Truist bank account information of Company 1 to initiate a $5,000 payment to MyChildSupport, attempting to pay herself. In making this payment, MARTIN falsely purported to be J.M. and falsely purported to have the authority to initiate payments from Company 1's Truist account. Truist bank flagged the payment as fraudulent and did not disburse the funds.

*Concealment of Wrongdoing*

13. On or about February 7, 2024, MARTIN was confronted by Truist management regarding improper customer account access. After the conversation, MARTIN left for lunch and never again returned to work at Truist. On or about February 8, 2024, Truist cut off MARTIN's remote access to Truist systems. On or about April 15, 2024, MARTIN was terminated by Truist. Despite repeated attempts by Truist to retrieve the Truist laptop it had previously issued to MARTIN, MARTIN retained access to the computer. To conceal her wrongdoing and prevent

the return of her Truist laptop, MARTIN faked her own death. On April 17, 2024, in response to an email from Truist to MARTIN's personal Google email asking for the return of the Truist work computer, MARTIN responded, "Sorry to inform you, she has passed away."

14. MARTIN concealed the fraud from Truist, the Truist account holders, and law enforcement to make the fraud more effective and long lasting. For instance, MARTIN often selected victim accounts with high monthly inflows and outflows as targets, in order to make her fraudulent transactions harder to detect. MARTIN also observed Truist customer account activity on multiple occasions prior to initiating fraudulent account transfers. Lastly, MARTIN on occasion transferred victim bank statements to her personal Google email address from her Truist work email address, in violation of Truist policy, to make the fraud harder to detect.

* * *

15. In all, MARTIN used her Truist access to steal $195,112.84 from the Truist accounts of over 70 individuals, small businesses, and non-profit entities. MARTIN targeted the Truist accounts of, among other entities, multiple churches, a children's museum, an eye tissue bank non-profit organization, manufacturing and construction companies, a small business making customized holsters, and the North Carolina Wing of the Civil Air Patrol.

### *Execution of the Scheme and Artifice to Defraud*

16. To knowingly execute and attempt to execute the scheme and artifice and to affect its object, on or about the dates set forth below, in the Eastern District of Virginia, defendant AHSHAH DIOR MARTIN did commit and cause to be committed the following acts, among others:

| Count | On or About Date | Description |
|---|---|---|
| 1 | January 26, 2024 | MARTIN used Truist bank account information she improperly obtained to initiate a $7,317.86 payment from M.R.E.'s Truist account ending in -0899 to MARTIN through MyChildSupport, the child support payment processor for the Virginia Department of Social Services. MARTIN initiated this payment from her home in South Chesterfield, Virginia, within the Eastern District of Virginia. |

(All in violation of Title 18, United States Code, Sections 1344(2) and 2.)

## FORFEITURE ALLEGATION

Pursuant to Rule 32.2(a) FED. R. CRIM. P., the defendant AHSHAH DIOR MARTIN is hereby notified that, if convicted of the offense alleged in Count One of the Criminal Information, she shall forfeit to the United States any property, real or personal, which constitutes or is derived from any proceeds traceable to the offense. If property subject to forfeiture meets the requirements of 21 U.S.C. § 853(p), the government will seek an order forfeiting substitute assets.

(In accordance with Title 18, United States Code, Section 981(a)(1)(C), as incorporated by 28 U.S.C. § 2461(c) and Title 21, United States Code, Section 853(p).)

Respectfully submitted,

ERIK S. SIEBERT
United States Attorney

By: *(signature)*
Avi Panth
Virginia Bar No. 92450
Robert S. Day
Assistant United States Attorneys
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
Phone: (703) 299-3700
Fax: (703) 299-3982
Avishek.Panth@usdoj.gov

6